Terry Merriam v. Petitioner & Appellant Ann Bartak This court has seen a number of cases in litigation and written a number of opinions on them already. It also involves this newer statute, 6015, IRC 6015, which was enacted in 1998, instead of the older statute, IRC 6013. 6015 has two relevant provisions, and another I will mention. 6015B, which generally is very similar to the old statute. 6015C, which is for married, separated, widowed, or divorced taxpayers. And 6015F, which provides for equitable relief. There are certain undisputed facts in this case. One undisputed fact is that Jay Hoyt, Walter Jay Hoyt, was convicted of defrauding the individual partners. Another undisputed fact is that Mr. Bartak, Joe Bartak, had the dominant role in this investment. What does that mean, the dominant role? How do you define that? Actually, I was quoting the tax court on that. As our arguments presented, Mr. Bartak was involved in the investigation, managing, reviewed the materials, made all of the capital contributions in the years at issue from a separate bank account that he was a sole signatory. And actually withheld some information from Mrs. Bartak on this investment as things started to look troublesome. He made the decision to invest, and he made later decisions about the investment. There isn't any evidence that he deceived her, though, is there? Or that he intimidated her? He didn't want to, is there? No. But I would caution Your Honor that, you know, that type of – Congress, when it changed the law, one of the concerns was that insufficient relief had been granted under 6013. And deceit or abuse isn't mandated for relief. It's just one of the criterias you could look at. However, Mr. Bartak did withhold… But it's still an essential point of this provision, isn't it? I say those are the essential elements of this provision. No, Your Honor. It is not. Did anybody ever say they were repealed? Your Honor, I believe you're referring to the understatement which is attributable or the reason to know. What abuse or equitable aspects or deceit go to reason to know. And if there is deceit by the spouse or, we believe, any other party, that, of course, would impact reason to know. The question I had is, it seems she's certainly disgruntled and she's in a situation where it wasn't a perfect sunshine disclosure with the husband, but – and all the basic things I thought she knew according to the task force. In other words, she got the promotional material. She knew they were making the investment. She looked at the tax returns, the front pages of the tax returns. She knew Hoyt was part of that. There were discussions. So it wasn't – it wasn't a spouse where, even if not deceived, was just kind of, I will call her oblivious. She knew all of those things. And that's where I'm having some trouble with the case because of the deference we owe the tax court in terms of those kind of findings. But none of those facts are relevant to the actual adjustment, what caused the actual adjustment. What caused the actual adjustment was Jay Hoyt's fraud about the number of cattle and the value of cattle, the facts. And Mrs. Bartak did not know anything about those particular things. Neither did he, right? But that would – that would – I mean, the fact is that when you get defrauded, you know, most people are kind of left holding the bag. That would be – well, it – And so the question here isn't, did she not know about the specific fraud? The question I thought is, did she know about the circumstances? Because in a deduction case, the top-level circumstances are often not sufficient, whereas, for example, in an income case that's not reported, if it's not on the return, that in and of itself indicates that there's some issue. Here they were dealing with a crook. Yes. This guy was a good crook. Yeah, very good crook. And he cheated lots of people out of lots of money. But that isn't really that issue here. The tax court said the purpose of Section 6015 relief is to protect one spouse from the overreaching or dishonesty of the other. And implied is not to protect both or either from the crook that they happen to come in contact with. First of all, the tax court mixed the two tests of attributable to and reason to know, and often the case law does that as well, when even though both of them might not have known about Jay Hoyt's fraud, Mr. Bartak was the instigator of the investment and managed it. How many trips did she make to the Hoyt ranch? You know, I believe two. Right. And she got to read and she had all the documents available to her. And she was able to find out that he had a criminal record and that he had a criminal record and that he didn't hide anything. Actually, he did, Your Honor. What did he hide? He had the later information about the troubles that was going on. And there is deceit, Your Honor. And there is deceit by Jay Hoyt. You know, we've got a bad apple. Husband's feeling bad when he finds out it's a really bad apple. But by then, they're kind of in it hook, line, and sinker. So I'm not sure from a temporal standpoint how a later, even if we take it as given that there was some, I don't want to say cover-up, but sort of embarrassed failure to disclose to the wife, how does that affect the initial investment in the decision to go forward? Not necessarily the initial investment, Your Honor. However, the record is very clear that Mrs. Bartek did not want to go forward on this investment and only signed the returns and the documents because she thought she had to. She signed the returns, her words, under protest. And this wasn't just frustration. She didn't understand that she could do anything else. She didn't understand that there was such a thing as married, binding, separate. She thought she had to sign the return because that was a legal obligation. Well, are you challenging any specific factual determinations that the tax court made, or are you challenging legal conclusions? Or where do you go with this? We are challenging the legal application of price versus commissioner. We are challenging the factual determination that she had reason to know, that the superficial information provided to her gave her, Mrs. Bartek, reason to know of the underlying circumstances.  The Innocent Spouse Statute is intended to provide relief from a dishonest and deceitful husband. Perhaps that was initially true, but it's no longer limited in that manner. And it's probably best evidenced by 6015C, where, you know, Congress didn't believe there was enough relief provided, and they provided a specific allocation, whether it's widowed, divorced, separated, et cetera. So it's broader than what the tax court stated. None of that's true here. Aren't these people still married? Yes, they are. But my point was that it's not as limited. The relief provided is not as limited as the tax court stated. But the analysis hasn't changed much, even if you change the relief, has it? Actually, I would argue it has. The analysis has changed to some extent under 6015B. And we submit that if Mrs. Bartek was separated or divorced, you know, under 6013E, I believe it used to be, she would have received relief, that the facts, the reason why Mrs. Bartek was denied relief is because she remains married, and this was considered an abusive tax shelter. And that alone is insufficient. Congress identified married individuals as being, you know, this relief being open to married individuals as well as separating the divorced individuals. Isn't that just a factor of the divorce? There's not a per se rule that you win if you're divorced, is there? Well, it is a per se. 6015C provides for the default is that you receive an allocated relief, yes, Your Honor. So if you have actual knowledge, no. Also, one significant, extremely significant change to the statute is 6015F. And Congress saw fit to add a second provision about equitable relief, and that is very significant. And yet both the tax court and commissioner identify that new set of relief as effectively the same as it was before, and that would be similar to 6015B1D, the equitable relief provided there. But, indeed, Congress intended it to be broader. Congress was specifically concerned that not enough relief was granted. And we submit that in this particular case, that F definitely applied for a number of reasons. One is the ---- How does the standard change specifically from deceit or intimidation or whatever you want to call it? Those are still the underlying factors that you have to rely on, aren't they? You're saying they broadened it, but I don't know how they broadened it. Well, those factors are not stated in the statute, so we start there. No, but they've been repeatedly stated in decisions, haven't they? They're repeatedly stated. It's one of the four factors, four or five factors, that have been repeatedly stated in previous case law. However, also in each and every one of those cases, it's stated that those factors are not rigid. And deceit by anyone would appear to impact reason to know, and we do not believe that has changed or was intended to change. Again, Congress believed that the statute was not being imposed the way Congress intended, that the relief was not being granted as Congress intended, and that's why Congress made the changes to 6015. But I thought the tax court specifically looked at F and indicated that even though she thought she had some relief there, you're still looking at the totality of the circumstances even under F. Is that correct? That's correct. It's all facts and circumstances, and that's where we believe some of the unique Hoyt facts should definitely come in. However, the tax court also specifically mentioned, and has mentioned in some other 6015 cases, that they don't believe that F adds anything that is significantly different from the equitable relief provided under 6015b1d. But here they said that they kind of concede on a, even if it's relevant, and the fact that there is this fraud by Mr. Hoyt, it doesn't change the result. So they've acknowledged it, it seems to me, but just come to a different conclusion than you might come to. That the tax court acknowledged F? Yes. The tax court applied the same criteria that it did under D, b1d. So, no, no additional or different criteria were applied. In particular, the tax court did not discuss or mention the complexity of this fraud, the fact that it took the commissioner over 20 years. But to me, I guess I can tell you my basic problem with what you're arguing. You're trying to substitute a crooked guy like Hoyt for the husband. And the husband was not a party to this fraud. The husband was also taken in. The husband also lost money. And so what you just said doesn't fly in the face of the husband being a defrauded third party just like she was. That's why attribution and reason to know are separate tests, Your Honor. That's correct. And the tax court made some findings that said she had reason to know. And you mentioned a superficial, her superficial knowledge. But I don't think that's the test. You have to show, you have to attack those factual findings on a factual basis. And she admitted things that would totally cut against the finding that she didn't know. She did not know of the events that caused the tax adjustment. It's the underlying circumstances, not the investment itself, and not, and this is a very important point, not the large deductions and not the tax code benefits. Bales v. Commissioner, the case that Hoyt won in 1989 in front of the tax court, make that very clear. It wasn't the tax benefits. It was the underlying facts. And those are the facts that Mrs. Bartek did not know. And her husband did? No, he did not. But he would still lose because this investment is attributable to him. And that's the blending that tends to happen, is that couldn't he? But the tax court specifically found that she played an active enough role in this that she could be charged with whatever knowledge he could be charged with. I, and we dispute that finding, Your Honor. Okay. On what basis? What factual basis? You can't just say, I dispute it, I dispute it. You've got to have facts that point that they were absolutely wrong. You know what the burden is. The factual basis, I believe, is very well substantiated in our brief. It's a given, it's an undisputed fact that Mr. Bartek had a dominant role and Mrs. Bartek saw a few documents, did meet her duty to inquire. There's a catch-22 here, Your Honor. Mrs. Bartek had an obligation to inquire, to review something, otherwise she would not be an innocent spouse because she didn't inquire properly. And at this point, it looks like Mrs. Bartek meeting that responsibility that's expected of an average individual is now being held against her under the reason to know. And I notice that I'm at three minutes. May it please the Court. I'm Anthony Sheehan and I represent the Commissioner of Internal Revenue. As the Court has already recognized, the underlying purpose of innocent spouse relief, going back to the whole history of it, is to protect one spouse from the overreaching deceit or dishonesty of the other spouse. So the focus is and has always been on the relationship between the husband and the wife. It was never intended to put a wife, and since it's the wife who's usually the innocent spouse, I might sometimes use that shorthand, in a position superior to her husband where when they're both fooled, she can get out but he can't. It was also never intended to put wives, simply by the fact that they're married, in a superior position to all other investors. There are lots of people who Walter Hoyt defrauded. And to say that the ones who happen to be married can escape because they happen to be wives is not the purpose. It is an innocent spouse test, not an innocent investor test. And the reason for it is that Congress wanted to loosen up the standard, though, isn't it? And Congress did indeed loosen up the standard. If you look, if you compare 6013e, the old statute with the new statute, first of all, they liberalized the old test. They took out the requirement that the item be substantially, that there be a substantial understatement, and they took out the requirement that the item be grossly erroneous. So 6015b, which mirrors 6013e, is already easier to meet. Secondly, for spouses that are divorced or separated or widowed, we've got 6015c, which provides for an allocation of liability in those cases, which were some of the more difficult cases on the facts. And thirdly, you've got 6015f, which says that if you lose under b or c on a technicality but the equities still favor you, you can still get relief. The commissioner can still cut you a break and you can get review in the courts. I think in sorting this case out, now that we've established the basis, you have to look at the statute and you have to look at each of the tests that are relevant to this case. First of all, we have 6015b1b, which states that the item has to be attributable to the erroneous items of one's spouse. Well, here we know that the items are attributable, the deficiency here is attributable to the erroneous Hoyt items, but that doesn't really answer the question asked by the statute. The statute then goes on to say, well, whose item is it? Is it an item of the husband? Is it an item of the wife? Or is it an item of both of them? Because many tax items can be items of both. This Court has not specifically ruled on it, but the Eleventh Circuit in Feldman and also the Second Circuit in Hayman have said, particularly the Eleventh Circuit in Feldman, that we look for a connection between the spouse and the item through ownership rights or otherwise. Well, here, Ann Bartack joined the Hoyt partnership. She signed the partnership documents and became a Hoyt partner along with her husband. In our view, that alone is enough to make these her items, too, along with his. And she would not be able to pass that test. It is a conjunctive test under 60. Kagan. Are you talking about the attribution at this point? Yes. Would you clarify on the reason to no in light of counsel's argument that even if she knew some stuff, and even if it's attributable to her, there wasn't sufficient to say she had reason to no of the under – I guess it would be the understatement or underestimate?  That would be 6015b1c. And the test is new or had reason to no. And there are really three different tests the courts have come up with on this court in Price being the lead case. The first one would be actual knowledge. Did the taxpayer have actual knowledge of the facts and circumstances that made the deduction not allowable? If she didn't know the legal consequences of those facts, it doesn't matter. If you knew all the facts and circumstances, you have actual knowledge. And I think we're all in agreement that neither Mr. or nor Mrs. Bartack had actual knowledge here. However, the second test would be reason to no, and that is whether a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know the return had an understatement. And other courts that have adopted this Court's test have rephrased it a little bit, and I think it's a sensible thing in cases like this one dealing with disallowed deductions and disallowed credits. Did you have, could the spouse be expected to know that the return had suspect deductions, that these deductions might not be good ones? And then the third thing is, which goes under the duty to inquire, does the spouse know enough that a reasonably prudent taxpayer in her position would question the legitimacy of the deduction? And I would note that these last two tests, reason to no and the one that would trigger the duty to inquire, are, do not require knowledge of Hoyt was making up phantom animals and Hoyt was overvaluing animals. It's just you look at the return, you look at her, and would this be something when someone would say, you know, if I may use an analogy, I don't feel so. I don't know what I have, but, you know, I don't feel so. Maybe I should go and. I don't know. I never get emotional with my tax returns like that and say, oh, I wonder how I feel about this. I feel terrible about, like everybody, they're not less. So I'm not quite sure what test you're imposing here because maybe you could tell me, because as you describe it, I'm not sure she would feel that way. I mean, she's not a highly sophisticated tax shelter attorney or accountant and how, on what basis would she know that there were suspect reductions? Well, first of all, I think we have in the record that she never felt comfortable with this. She always felt that there was something wrong here. We have very dramatic deductions here. The bar tax were able to reduce or I think in some years even eliminate their tax liability from 1980 through 1986. They received in excess of $35,000 in refunds, which is very, very large. She just thought she was doing too well. It couldn't be true, is it? Yeah. And she read the promotional materials, which had very dramatic warnings in plain English that even someone with a high school education could understand. And one of them even said, you know, you're reading this and you're thinking that the sensible part of you is thinking this is just too good to be true. This can't be legal and all these guys are going to end up in jail. But, you know, you read this. I mean, all of these things should have been at least enough to trigger the duty. I think the government submits it gave her reason to know. And it was at least enough to say, you know, you look at the promotional material and even the promotional material, what it gives out says you might not think this is legitimate, which would trigger a duty to inquire. Is the duty to inquire a subsidiary duty to the should-have-known duty? The way this Court has constructed it, if you look at the Price case, is to say that you didn't know and you probably didn't have reason to know, but there was enough there that you should have asked. And you fulfill that duty by getting an explanation that would satisfy a reasonably prudent person in the spouse's position. Now, in this case, and there are cases out there where wives have been able to rely on their husbands. But in all of those cases, and we cited them in the brief, the husband himself was a financial expert. And also, it turns out in all of them, the return had been prepared by an independent expert. And here, Mr. Bartack was a firefighter. He had done some investing, but he was by no means qualified to evaluate this program. And the returns were prepared by Hoyt and the Hoyt organization, not an independent person. And in this case, no independent expert was consulted. So we would submit that. So if KMPG had prepared these returns, if KMPG had prepared these returns, then she might have been able to. Yes, if KMPG had prepared it. And I wouldn't even have to, I don't even think you have to go that far to how many big accounting firms are there left anymore. I don't know. But somebody independent, a lot of them was a preparer or an attorney or a CPA known and trusted by the family. Here it was Hoyt. Finally, I think we've already mentioned 6015F. D and F, 6050B1D and 6015F have essentially the same language. They're both tests which look at all the facts and circumstances to see if, to see which, seeing if the equities favor the wife. The difference being that spouse can, you know, she can fall short of the technical tests of B and C and still possibly get relief under F. The tax court analyzed all the facts and circumstances in its decision. It was not clearly erroneous. And if there are no further questions, I'd be happy to rest on my break. Thank you. Thank you. A few points, Your Honor. First of all, I would note that the Commissioner talks in terms of suspect deductions on the tax return. Let's be clear. He's talking about tax code provisions that are allowed and, in this case, specifically approved of by the Bales court in regards to the Hoyt partnerships. So there's nothing wrong with the tax code provisions. And then when it's mentioned should have looked and gone to another tax preparer, where would have that gotten Mrs. Bartak? First of all, that's contrary to some case laws saying that, you know, an average taxpayer probably isn't that sophisticated to know that they should do that. But if KPMG, and it's interesting Your Honor picked KPMG since they just pled guilty to some criminal sanctions, but if KPMG looked at this tax return, all they would see would be the tax code provisions, not the underlying facts. And it's important to note that you could, even if they looked up Hoyt, KPMG looked up Hoyt on now the Internet or wherever, the Cattlemen's National, he would have been a well-known cattle breeder with large ranches. So there was nothing that KPMG could have added to this for Mrs. Bartak. He just had phantom cattle, I guess. Pardon? He just had phantom cattle. Something like that. He had thousands of cattle. We believe that the highest amount was probably between 5,000 and 10,000. And yet, in certain years, the highest number he actually claimed in all the various returns, approximately 118 returns, was about 30,000. Impossible for an average taxpayer to know or KPMG to know what was going on here. So that independent tax preparer is a red herring. It wouldn't have done anything in reference to this case. We also note that Commissioner relies on ownership. And we also note, we were here once before in a case called Abilene v. United States, and this Court found, and Commissioner in that Court argued that the Hoyt documents were inherently unreliable. So the Commissioner could not rely on those K1s to know who is a partner. And yet the Commissioner is now saying that those same documents meant that Ann Bartak was a partner and there should be an attribution to Mrs. Bartak. Finally, we do want to mention that the tax court did find that Mrs. Bartak wrote checks in regards to this investment. In fact, Mrs. Bartak in the years at issue wrote two checks for tax return preparation, not for capital contribution, not regarding the partnership. So that would be one of the many facts that we dispute. I notice my time is almost up. Do you have any questions? I think that's, we don't have any further questions. Thank you. Thank you. The case of Bartak v. Commissioner is submitted. Thank both counsel for your arguments this morning. And we're now adjourned.
judges: Cudahy , T.G. Nelson, McKeown